## HENRY POWLES et al.

*v.*

## CHARLES GRIFFITH et al.

Merchant and Quinby, being owners of a tract of land, mortgaged it to Magie. They subsequently sold part of it to Hudnit and Slater, taking back a purchase-money mortgage. After Quinby's death his administrators and Merchant assigned that mortgage. The assignee foreclosed it, and Merchant and four of Quinby's children bought the property at the foreclosure sale. Quinby's heirs-at-law afterwards proceeded in partition to divide the part of the property which Merchant and Quinby had not sold. The land not being susceptible of partition without great prejudice to the owners, it was sold by order of the court. Afterwards Merchant and three of Quinby's daughters bought the Magie mortgage and brought this suit to foreclose it.—*Held,* that the purchaser at the partition sale was not entitled to have the Hudnit and Slater parcel sold to pay the mortgage before recourse to his own, but that, on the contrary, the owners of the former tract were entitled to that equity as against his land, and that the sale in partition neither created any new equity nor affected the existing one, because it was merely a conversion of the land into money by judicial order for the purposes of the partition.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. F. W. Stevens,* for complainant.

*Mr. T. N. McCarter,* for C. Borcherling.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage given September 1st, 1870, by James M. Quinby and Silas Merchant, both now deceased, to William J. Magie, trustee, to secure the payment of $6,409.18, on a tract of land of about thirty-four and a half acres, lying in the counties of Essex and Union. The mortgage was, in January, 1882, assigned by Mr. Magie to the complainant Powles in trust for Silas Merchant and Anna E. Wright (widow), Maria Antoinette Quinby and Ida Scudder, wife of Wallace M. Scudder. After the giving of the mortgage, and on the 10th of

February, 1882, Quinby and Merchant, who then still owned the
mortgaged premises, except a small piece sold by them December
19th, 1870, to Charles Griffith, conveyed by deed of general
warranty a part of the property to Samuel B. Hudnit and
Gabriel H. Slater, who gave them a mortgage thereon of that
date for $9,000, payable in three years, with interest, for part of
the purchase-money. On July 20th, 1874, Quinby died intestate,
leaving one son, James N. Quinby, and four daughters, the
before-mentioned Anna E. Wright, Maria Antoinette Quinby,
Ida Quinby (now Scudder) and Eliza Q. Borcherling, wife of
Charles Borcherling. Mrs. Borcherling has since died intestate,
leaving her husband and an only child, Frederick A. Borcher-
ling, who is a minor. The administrators of Mr. Quinby were
his sons-in-law, Messrs. Borcherling and Wright, and John C.
Beardsley. On July 1st, 1876, Silas Merchant and Messrs. Bor-
cherling and Wright, surviving administrators of Mr. Quinby
(Mr. Beardsley had died), assigned the Hudnit and Slater bond
and mortgage to the Newark Savings Institution as collateral
security. In 1877 the savings institution brought suit to fore-
close that mortgage, and the premises were sold by a master
under execution in that suit in January, 1878, and were pur-
chased at the sale by Mr. Merchant and Maria A. Quinby,
Anna E. Wright, Ida Quinby (now Scudder) and James N.
Quinby, and a deed therefor was given to them accordingly. In
1878 Mrs. Wright, Maria A. Quinby, Ida Quinby and James
N. Quinby brought a suit in this court against Mr. Merchant
and Mr. Borcherling and his son for partition of the part of the
original tract which Messrs. Merchant and Quinby owned after
the sales to Griffith and Hudnit and Slater, and the property
was, in March, 1881, sold in that suit to Mr. Borcherling for
$306 (the estimated amount of the costs of the proceedings in
partition), and conveyed to him accordingly by deed dated
May 2d, 1881. The bill in this cause is filed by Mr.
Powles as trustee, and his *cestuis que trust,* who are the execu-
tors of Mr. Merchant, who is dead, and Mrs. Wright, Mrs.
Scudder and Miss Quinby, to foreclose the Magie mortgage.
Mr. Borcherling insists that he is, under the circumstances,

in equity entitled to have the Hudnit and Slater tract sold to pay the mortgage before recourse is had to his land. There is no ground for this claim. Hudnit and Slater, who held their part of the property under a deed of general warranty, had the right in equity to have the part of the property which Merchant and Quinby retained after the conveyance to them, sold for payment of the Magie mortgage before recourse to theirs. The purchasers at the foreclosure sale stand in their place in that respect, and are entitled to the same equity. It is urged, however, that inasmuch as these purchasers were Mr. Merchant and four of the heirs-at-law of Mr. Quinby, who, with the heir of the deceased daughter of Mr. Quinby and Mr. Borcherling (as tenant by the curtesy of his wife's share), were the owners of the property sold in partition, they are not only not entitled to the equity, but that Mr. Borcherling is, as before stated, entitled to the equity which he claims against them. But the equity is one which is not confined to the original grantee. It is connected with the land, and passes to those who hold under him. *Shannon* v. *Marselis, Saxt. 413.* And they will be entitled to it accordingly, unless some special reason appear to the contrary. Not only are those of Quinby's children who claim under the purchase at the foreclosure sale (Mrs. Wright is owner by purchase of her brother's interest in the property) entitled to stand, as to the equity, as strangers would have stood (that is, in Hudnit and Slater's place), but Merchant's representatives are so entitled also. When the purchase at that sale was made, the purchasers clearly had the right to have the rest of the tract (except, of course, what had been sold to Griffith) sold to pay the Magie mortgage before recourse to the Hudnit and Slater parcel. And there was nothing in the partition sale to affect it. That sale was a judicial one, made merely for the conversion of the property into money in order to make a partition which otherwise could not be made without great prejudice to the owners. The purchaser took the property subject to the mortgage (he so, in fact, understood it), and subject to the equities which the owners of the other parts of the whole tract were entitled to in respect to it. *Cool* v. *Higgins, 8 C. E. Gr. 308.*

The case under consideration more briefly stated stands thus: Merchant and Quinby, being owners of the whole tract, mortgaged it to Magie. They subsequently sold part of it to Hudnit and Slater, taking back a purchase-money mortgage. After Quinby's death, his administrators and Merchant assigned that mortgage. The assignee foreclosed it, and Merchant and four of Quinby's children bought the property at the foreclosure sale. Quinby's heirs-at-law afterwards proceeded in partition to divide the part of the property that Merchant and Quinby had not sold. The land not being susceptible of division without great prejudice to the owners, it was sold by order of the court, and Mr. Borcherling bought it, in March, 1881, subject to the Magie mortgage. Afterwards, in January, 1882, Merchant and three of Quinby's daughters bought the Magie mortgage, and this suit is brought to foreclose it. From this statement it seems entirely clear that as well after as before the partition sale, the owners of the Hudnit and Slater tract were entitled to the same equity against the land sold in partition as to the payment of the Magie mortgage, which Hudnit and Slater were entitled to as owners, and that that right is in no wise affected by the fact that they were part owners of the latter land when the sale in partition was made.

It was alleged on the hearing that there was an understanding between Mr. Borcherling and those of the children of Mr. Quinby who purchased the Hudnit and Slater land at the master's sale, that the purchase should be for the benefit of Mr. Borcherling's son, with the others, which understanding was not observed, and it was urged that, therefore, in view of the imputed breach of faith, it would be inequitable to concede to the purchasers the right in question if otherwise entitled to it. But in the first place, there is no issue in the cause as to this matter; and in the next, if there were, and the fact had been established, it would not affect the question under decision. The owners of the Hudnit and Slater land are entitled to have the land sold in partition first sold to pay the mortgage in suit before recourse to their property