## WALTER K. DAVENPORT et al., Appellants, v. H. W. TIMMONDS, Respondent.

**Springfield Court of Appeals, June 12, 1911.**

1. **APPEAL AND ERROR: Sufficiency of Abstract: Judgment.** Respondent challenged the sufficiency of appellants' abstract on the grounds that it showed no final judgment. The abstract is examined and *held*, that while the judgment is not exactly in the usual form, there was enough to show that the court dismissed the plaintiffs' bill and rendered judgment against them for costs.

2. ——: ——: **Filing Bill of Exceptions: Objections to Omissions in Record Proper.** Where it appeared from the abstract, including the bill of exceptions, that the judge by an order extended the time for the filing of the bill of exceptions and that the bill was filed within the time granted, it is not sufficient, under Rule 15 of the Springfield Court of Appeals, for the respondent, in attacking the abstract, to point out that the abstract of record proper does not show the order, nor the filing of the bill of exceptions, but the respondent must further allege that the order was not made extending the time or that the bill of exceptions was not filed within the time allowed by the judge, and in such case the court will then determine the matter.

3. **SUBROGATION: Owners of Part Paying Mortgage on Whole Tract: Privies.** The owner of two hundred acres of land gave a deed of trust to secure a loan. Later he concluded to divide the land between four of his children and he made each of them a deed to fifty acres, the said children each orally agreeing to pay one-fourth of the indebtedness then standing against the whole tract. The fifty acres conveyed to one of the sons was sold under an execution based on a judgment against this son and the purchaser at that sale conveyed said fifty acres by quit-claim deed to the defendant. Later the other three children, plaintiffs in this case, to protect their own property paid off the entire loan, which was secured by the deed of trust given by their father, and then instituted this suit to have defendant's fifty acres charged with one-fourth of the entire debt paid by them. *Held*, that the defendant stood in the shoes of the son, whose interest he had purchased, and under the doctrine of subrogation, plaintiffs were entitled to a judgment, giving them a lien on defendant's land for one-fourth of the mortgage debt paid by them.

4. ———: **Equity: Independent of Contract.** Subrogation is based on rules of equity. It is extended to whomsoever, as a matter of right and good conscience it should be applied, independent of any privity of contract between the parties.

5. ———: **Redeeming from Mortgage.** Whenever a mortgage rests upon land, which is owned by several persons, in such a manner that their equities, as between themselves are equal and one of them redeems from the mortgage, he is entitled to a pro rata contribution from the other owners and may keep the lien of the mortgage alive by equitable assignment as security for such contribution.

6. ———: ———: Where a part owner of land or an owner of a piece of land included in a mortgage with other lands, pays the whole debt, he is entitled to be subrogated and reimbursed from the other land for the excess paid by him.

Appeal from Dade Circuit Court.—*Hon. Edward J. White,* Special Judge.

REVERSED AND REMANDED (*with directions*).

*A. J. Young* for appellants.

(1) Plaintiffs, being interested in the property, paid the incumbrance to protect their own interest, and were thereby entitled to be subrogatetd to all the rights of the holder of the incumbrance so paid. Evans v. Halleck, 83 Mo. 376; Norton v. Highleyman, 88 Mo. 621; Bunn v. Lindsay, 95 Mo. 258, 27 Am. and Eng. Ency. Law (2 Ed.) 203; Capen v. Garrison, 193 Mo. 343. (2) Subrogation is a doctrine of equity jurisprudence. It does not depend upon privity or contract, express or implied, except insofar as the known equity may be supposed to be imported into the transaction, and thus raise a contract by implication. 27 Am. and Eng. Ency. Law (2 Ed.) 203; Capen v. Garrison, 193 Mo. 341. (3) Defendant having acquired title to his land by quit claim deed and his immediate grantor by sheriff's deed, they are not innocent purchasers and take the same subject to all the equities between the original parties. Southern Bank v. Nichols, 202 Mo. 321; Turner v. Edmonston, 210 Mo. 421. (4) Plaintiffs did not become principals in

the common debt of $1400 created by J. W. Davenport, not having assumed or agreed to pay the same either in writing or otherwise, nor was such assumption or agreement incorporated in the deeds delivered to them. Hefferman v. Weir, 99 Mo. App. 301; Keifer v. Shacklett, 85 Mo. App. 449; Hicks v. Hamilton, 144 Mo. 495.

*H. W. Timmonds* for respondent.

(1) As there does not appear to have been a final judgment, nor judgment of any kind, rendered the appeal will be dismissed. R. S. 1909, sec. 2038; Mills v. McDaniels, 59 Mo. App. 331; Halloway v. Halloway, 97, Mo. 639; State ex rel. v. Turner, 113 Mo. App. 53; Bick v. Umstattd, 137 Mo. App. 270; Ins. Co. v. Hurst, 129 Mo. App. 627. (2) The leave to file a bill of exceptions and an extension of time for filing the same must be shown by the record proper. The statement that leave was granted appellants to file a bill of exceptions and that the time for filing the same was extended will not suffice, even if set out in the bill of exceptions. Ins. Co. v. Hurst, 129 Mo. App. 627; Bower v. McDaniel, 198 Mo. 317; Shenwell v. McKinney, 214 Mo. 692. (3) The indebtedness was one debt of J. W. Davenport, evidenced by one note and secured by one mortgage. The plaintiffs and their brother, Joseph T. Davenport, in assuming the payment of this debt of their father, became the principals therein and their father their surety on the note. Nelson v. Brown, 140 Mo. 580; Bensieck v. Cook, 110 Mo. 173; Fender v. Hazeltine, 106 Mo. App. 31; Launeier v. Halleck, 103 Mo. App. 116; Regan v. Williams, 88 Mo. App. 577; VanMeter v. Poole, 130 Mo. App. 433. (4) The right of subrogation will not exist between parties who are equally bound, as, for example, co-partners, co-obligors and co-contractors, except by virtue of a special contract. Bispham's Pr. of Eq. (5 Ed.) sec. 337. (5) Contribution will not lie in this case, for the debt is not that of the defendant and no obligation on his part exists to pay the debt paid by the

principals. 7 Am. and Eng. Ency. Law 338; Bispham's Pr. of Eq., secs. 328, 330. (6) An equitable lien cannot be created in the case at bar because the payment made by the plaintiffs was not made at the request of instance of the defendant nor was it his debt and he was under no disability. Capen v. Garrison, 193 Mo. 350.

GRAY, J.—The respondent challenges the sufficiency of appellants' abstract. It is claimed the abstract shows no final judgment. The abstract states: "The said special judge, after filing his statement of facts and written opinion as to the law in said case, caused the following judgment entry to be made: 'Now at this day the above cause coming on to be heard, there appearing the plaintiffs and defendant in their own proper persons and by attorneys, and both parties announcing ready for trial, the issues submitted to the court upon competent testimony, and the court having seen, heard and understood all the matters and things at issue between plaintiffs and defendant and the court having filed his written opinion and statement of his findings of the facts and also his declarations of the law applicable to this case, doth find that plaintiffs' bill should be dismissed without prejudice, and that the defendant have and recover of and from the plaintiffs his costs in this behalf expended.' " In due time a motion for new trial was filed, and the same was overruled and the cause appealed to this court. While the judgment is not exactly in the usual form, there is enough to show the court dismissed the plaintiffs' bill and rendered judgment against them for costs.

The other objections to the sufficiency of the record are based upon the fact that the abstract of the record proper does not show orders extending the time for filing the bill of exceptions and ordering the same filed. When the abstract, including the bill of exceptions, is read, it appears that the judge did extend the time by order, and that the bill was filed within the time granted.

The respondent does not allege, as required by the rules of this court in such cases, that the order was not made extending the time, or that the bill of exceptions was not filed within the time allowed by the judge. There are numerous cases by the other appellate courts of the state holding that the abstract of the record proper must show these things. But this court has adopted a more liberal rule. Our rule 15 provides that in all cases wherein there are statements or other evidence in the printed abstract of the record, including the bill of exceptions, tending to show the filing of the bill of exceptions, and that the action of the court on the same was taken in proper time, such abstract shall be deemed sufficient, and in motions challenging the sufficiency of the same as to such matters, it will not be sufficient to state that the abstract does not show such steps were taken or in proper time, but the motion must especially allege that as a matter of fact, such steps were not taken at all, or not in proper time, as the case may be, and thereupon, the court shall determine the matter. The objections to the abstract will be overruled.

This cause was tried before the Honorable Edward J. White, special judge, and the facts of the case are fairly determined in his written opinion as follows:

"Plaintiffs are the sons and daughter of J. W. Davenport, who, in January, 1900, as the owner of a three hundred acre tract of land in Dade county, Missouri, gave a deed of trust on said land to secure a debt of $1800, due to the Citizens' Savings Bank and Trust Company.

"Said J. W. Davenport was the maker of the note which this deed of trust was given to secure, and something like a year after the negotiation of this loan, he paid the sum of $400 on the debt, and had a portion of the land covered by the trust deed, released.

"In October, 1905, he concluded to divide the two hundred acres, remaining charged with the balance of

this debt, between four of his children, the plaintiffs and another son, Joseph T. Davenport.

"To perfect this object, he and his wife made, executed and delivered to each of his said children, a separate warranty deed, to separate tracts of fifty acres each, and each of these deeds were placed of record, and recited a consideration of $350, but nothing was paid the grantors, and the grantees, by verbal agreement, each assumed and agreed to pay one-fourth of the debt of $1400 then standing against the whole of said tract of two hundred acres.

"The fifty acres so conveyed to Joseph T. Davenport was sold at Sheriff's Sale in November, 1907, and purchased by M. J. Drummond, who in February, 1908, conveyed said fifty acres by quit claim deed to the defendant.

"In January, 1910, the plaintiffs made a new loan on their one hundred and fifty acres of this land, and took up the note and deed of trust on the two hundred acres, and they released all the land from the lien of the old deed of trust except the defendant's fifty acres, and the object of this suit is to charge this fifty acres with one-fourth of the remainder of this original debt, with interest, or the sum of $396.25."

The trial judge found the issues for the defendant, thereby holding that plaintiffs were not entitled to a lien on the defendant's land for any part of the mortgage debt paid by them. The plaintiffs have appealed to this court.

Subrogation is based on rules of equity. It is a creation of the law whereby substantial justice may be accomplished, regardless of contract relation. In the recent case of Holland Banking Co. v. See, 130 S. W. 354, we had occasion to review the authorities generally on the question of subrogation, and we made the following quotations:

"Subrogation is a doctrine of equity jurisprudence. It does not depend on privity or contract, express or im-

plied, except in so far as the known equity may be supposed to be imported into the transaction. It is a consequence which equity attaches to certain conditions. The parties may not have contracted for it either expressly or by legal implication, but if, in the performance of that contract which they did make, certain conditions have resulted which make it necessary for equity to interpose its authority in this respect it will do so, provided that in so doing it will violate no law and not alter the contract."

"The doctrine of subrogation has kept pace with the growth of the equitable principles until at the present time it exists in all its pristine vigor, and is extended to whomsoever as a matter of right and good conscience it should be applied."

"It is treated as the child of equity and is applied to secure a real and essential justice regardless of form, and independent of any privity of contract, or consideration between the parties affected by it."

"The doctrine of subrogation is not a fixed and inflexible rule of law and equity. It does not owe its origin to statute or custom. It is a creature of the equity courts, invented and applied by them to do justice or prevent an injustice being done in a particular case, and under a particular state of facts where the law is powerless in the premises.'

It seems to us that the facts and circumstances in this case make it one to which the principle of equitable lien or subrogation is specially applicable. The father of plaintiffs was the owner of a tract of land encumbered by a deed of trust. He deeded the land by separate deeds and in separate parcels to his sons, with the understanding that each was to pay a part of the mortgaged debt. One of the sons became indebted and his equity of redemption in the part of the land deeded to him was sold at judicial sale, and the defendant's grantor became the purchaser thereof, with knowledge of the mortgage. The note secured by the mortgage became due, and it was

paid by these plaintiffs to protect their own land from sale. In paying the mortgaged debt, they not only paid their own parts, but the part, which, under an equal distribution, should have been paid by defendant's grantors.

In Foster v. Williams, 128 S. W. 797, this court held that where certain tenants in common of land, upon which there was a judgment lien, paid the entire debt to protect the title, they would be entitled to a lien on the interest of the other tenants for whose benefits the payments were made. NIXON, Judge, delivered the opinion of the court, and said: "Under the terms of the decree, the appellants were not mere volunteers or strangers in paying the $220, and, having expended their money to extinguish the charge or lien upon the land for the benefit of all the tenants, as between them and their cotenants, they would ordinarily be entitled to subrogation. If the interests of the tenants in common were severally bound for the payment of the entire debt of $220, and the same was paid by the appellants to protect the title to the land, then such payment would give to them a lien upon the interests of the other tenants for whose equal benefit the payment was made."

In 3 Pomeroy's Equity Jurisprudence, section 1222, it is said: "It is a general doctrine of equity that where a common charge rests upon a fund which belongs to several owners, who stand upon a footing of equality with respect to their individual titles and relations with the holder of the charge, the burden should rest ratably upon each separate portion of the fund; and if the owner of one portion, for the purpose of protecting his own interest, pays off the common charge, he is entitled to call upon the other owners to contribute their proportionate shares of the amount thus paid. This doctrine is a simple application of the maxim, 'Equality is equity.' Whenever, therefore, a mortgage rests upon land which is owned by several persons in such a manner that their equities as between themselves are equal, and one of them redeems from the mortgage, he is entitled to a

pro rata contribution from the other owners, and may keep the lien of the mortgage alive, by equitable assignment, as security for such contributions."

Mr. Pomeroy further says that if a person is the owner of a part of the premises secured by a mortgage, he cannot compel, in the first instance, other owners of the property to advance their proper shares for the purpose of paying off the debt, but he must himself, redeem the whole mortgage, and his only equity then consists in his right to enforce the mortgage upon the estates of the others interested in the land, for their proportionate part.  [Section 1220.]

In Murray v. O'Brien, 105 Pac. 840, 28 L. R. A., N. S. 998, it is held that the owner of a half interest, in a parcel of real estate, has a right to tender the amount due on the mortgage on the other half interest, and be subrogated to the rights of the mortgagee.  The court said: "The right of subrogation, under the better rule, applies in cases where a party who has an interest in the property, and who does not stand as a mere volunteer, pays a debt owing in whole or in part by another to protect his own rights or to save his own property.  The remedy is no longer limited to sureties and quasi sureties, but is freely applied by courts of equity in all cases where good conscience and equity dictate that a debt paid by one under any sort of legal coercion ought to be paid by another."

In the note to Parsons v. Urie, 8 L. R. A., N. S. 559, the author says: "stripped of all its accidental features the above case presents the question.  May one co-tenant of mortgaged property pay off the mortgage and be subrogated to the rights of the mortgagee as against the other co-tenant or one holding under him?  The courts with great unanimity support the affirmative of this question."

The following cases hold that where a part owner of land or an owner of a piece of land included in a mort-

gage with other lands, pays the whole debt, he is entitled to be subrogated and reimbursed from the other land for the excess paid by him: [Winslow v. McAlpine, 65 Ala. 377; Dobyns v. Rawley, 76 Va. 537; Gearhart v. Jordan, 11 Pa. (Jones) 325; Appeal of Watson, 90 Pa. 426; Shropshire v. Creditors, 15 La. Ann. 705; Zabriskie v. Salter, 80 N. Y. 555; Leach v. Hall, 64 N. W. 790; Kinkead v. Ryan, 55 Atl. 730; Metropolitan Trust Co. v. McKinnon, 172 Fed. 846.]

The Chancellor filed with his finding of facts, his conclusions of law, and it is shown therefrom that he relied on the case of Nelson v. Brown, 140 Mo. 580, 41 S. W. 960, and kindred cases. The respondent relies on such cases in this court.

In the Nelson case, the court simply decided that where a person purchases land encumbered by deed of trust, and assumes and agrees to pay as a part of the purchase price, the encumbrance, he becomes the principal debtor, and his grantor the surety for the payment of the mortgage. And when he has paid it, he is not entitled to be subrogated to the rights of the mortgagee. The case is not in point.

In this case, it was not the understanding between the father and his sons, that each was to pay the sum of $1400 as a part of the purchase price. When the transaction is correctly interpreted, each son only assumed one-fourth of the mortgaged debt, and when the three plaintiffs paid more than three-fourths of the mortgaged debt, they were paying a greater part of the mortgage than they had assumed. The whole rights of parties purchasing different interests in lands securing mortgages, are fully discussed in Pomeroy's Equity Jurisprudence (2 Ed.), Vol. 3, sections 1204 to 1228 inclusive, and reference thereto is suggested for further discussion of the point.

The respondent stands in the shoes of the son whose interest he purchased. [Parsons v. Urie, 64 Atl. 927, 8

L. R. A., N. S. 559; Bank v. Nichols, 202 Mo. l. c. 321, 100 S. W. 613.]

The premises considered, the judgment will be reversed and the cause remanded, with instructions to render judgment in favor of the plaintiff against the said real estate of the defendant for its proper part of the mortgaged debt. All concur.